IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

MERITER HEALTH SERVICES, INC.,

Plaintiff,

v.

MMIC INSURANCE COMPANY and
FEDERAL INSURANCE COMPANY,

Defendants.

Case No. 16-CV-52

**COMPLAINT**

Plaintiff Meriter Health Services, Inc. ("Meriter"), by its undersigned counsel, submits the following Complaint against Defendant MMIC Insurance Company ("MMIC") and Federal Insurance Company ("Federal").

**NATURE OF CASE**

1. Meriter is seeking money damages and declaratory relief against its insurance companies, MMIC and Federal, in connection with a class action lawsuit against Meriter styled *Johnson v. Meriter Health Services Employee Retirement Plan*, W.D. of Wisconsin Case No. 3:10-cv-426-wmc (the "Class Action").[1] Specifically, Meriter contends that MMIC breached its duty to defend Meriter in the Class Action and has wrongfully refused to indemnify Meriter for amounts that Meriter agreed to pay to settle the Class Action. Although Federal did accept its duty to defend, it has failed to indemnify Meriter for settlement amounts that fall within Federal's policies.

[1] The Class action case was originally referenced as Boyd *v. Meriter Health Services Employee Retirement Plan*, W.D. of Wisconsin Case No. 3:10-cv-426-wmc but lead plaintiff Tammy Boyd was removed in favor of Johnson as class representative during the litigation.

## PARTIES

2.      Meriter is a Wisconsin non-stock corporation with its principal place of business in Madison, Wisconsin and is a non-profit, section 501(c) (3) tax-exempt, community hospital.  Meriter came about through a merger of the Madison General and Methodist Hospital. Meriter is a citizen of Wisconsin for purposes of 28 U.S.C. § 1332.

3.      Defendant MMIC is an insurance company incorporated and with its principal place of business in Minnesota.  MMIC issued Employee Benefit Administrative Liability Coverage to Meriter that was triggered by the allegations in the Class Action.  MMIC is a citizen of Minnesota for purposes of 28 U.S.C. § 1332.

4.      Defendant Federal is a corporation incorporated in Indiana, with its principal place of business in New Jersey.  Federal issued a Fiduciary Liability policy to Meriter that was triggered by the allegations in the Class Action claim.  Federal is a citizen of Indiana and New Jersey for purposes of 28 U.S.C. § 1332.

## JURISDICTION AND VENUE

5.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Meriter and the Defendants are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.  By itself, the amount of Meriter's indemnity claims against MMIC and Federal are worth multiple millions of dollars.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district. Specifically, the relevant insurance policies were issued to Meriter in Madison, Wisconsin and the Class Action lawsuit was venued in this district.

## BACKGROUND FACTS

**A.    The MMIC Primary Policy.**

7.    MMIC issued a Healthcare System Liability Protection Policy to Meriter (Policy No. MHP000256) for the policy period October 1, 2009 to October 1, 2010.  The 2009-10 MMIC Primary Policy (the "MMIC Primary Policy") is attached as **Exhibit 1**.  MMIC also issued a Healthcare System Liability Protection Policy to Meriter (Policy No. MHP000256) for the policy period October 1, 2010 to October 1, 2011.

8.    Coverage C of the MMIC Primary Policy contained Healthcare System Employee Benefits Administration Liability (EBAL) coverage for Meriter.  Under the EBAL coverage, MMIC's limit of liability was $1,000,000 for each wrongful act and $3,000,000 in the aggregate.

9.    The insuring agreement in the EBAL coverage states as follows:

> MMIC agrees to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of any claim or claims first made and reported against the insured during the policy period, occurring within the coverage territory, arising from the administration of the named insured's employee benefits program.

10.    The EBAL coverage also stated that MMIC had the "duty to defend any suit against the insured alleging such damages, even if any of the allegations of the suit are groundless, false, or fraudulent."

11.    The MMIC Primary Policy defines "damages" to mean "all amounts of money [sic] are payable to compensate for loss because of injury to which this insurance applies."

12.    The MMIC Primary Policy defines "administration" to mean any of the following acts authorized by Meriter:   (a) giving counsel to employees with respect to the employee benefits program; (b) interpreting the employee benefits program; (c) handling of records and

processing of benefits in connection with the employee benefits program; or (d) enrolling, terminating or cancelling employees under the employee benefits program.

13. The MMIC Primary Policy defines "employee benefits program" to include any pension or profit sharing plans.

14. The MMIC Primary Policy contains an "other insurance" that states as follows:

**Other Insurance**

(a) If an **insured** has other insurance against a loss arising from other than peer review services, but covered by this policy, MMIC shall not be liable under this policy for a greater proportion of such loss than the limit of liability stated on the Declarations Page bears to the total limit of liability of all valid and collectible insurance against such loss.

(b) With respect to loss arising from peer review services, this policy shall apply in excess of any other insurance, self-insurance fund or agreement of indemnification that is applicable to such loss, except that this policy shall be primary insurance for loss arising from any peer review services performed on behalf of MMIC.

**B. The MMIC Umbrella Policy.**

15. MMIC issued a Healthcare System Umbrella/Excess Liability Policy to Meriter (Policy NO. MHP000256) for the October 1, 2009 to October 1, 2010 policy period (the "MMIC Umbrella Policy"), attached as **Exhibit 2**. MMIC also issued a Healthcare System Umbrella/Excess Liability Policy to Meriter (Policy NO. MHP000256) for the October 1, 2010 to October 1, 2011 policy period. The Policies contain identical terms in many respects, except for the difference in limits set forth below.

16. The 2009-10 MMIC Umbrella Policy provided coverage limits of $14 million for each occurrence and $14 million in the aggregate. The 2010-11 MMIC Umbrella Policy provided coverage limits of $20 million for each occurrence and $20 million in the aggregate.

17. By an endorsement EEBL301H, the MMIC Umbrella Policy provided excess Employee Benefits Administration Liability coverage to Meriter. The insuring agreement to this endorsement stated as follows:

> MMIC agrees to pay on behalf of the insured, in accordance with the applicable provisions of the underlying insurance those sums, in excess of the applicable limits of the underlying insurance, which the insured shall become legally obligated to pay as damages, because of any claim or claims to which the underling insurance would apply except for the exhaustion of its applicable limit of liability, first made against the insured and reported to MMIC during the policy period and occurring within the coverage territory, arising from the administration of the named insured's employee benefits program.

18.     Endorsement EEBL301H of the MMIC Umbrella Policy also incorporated MMIC's duty to defend any suit seeking covered damages, provided the limits of the underlying insurance has been exhausted.

19.     Endorsement EEBL301H of the MMIC Umbrella Policy incorporated the definitions set forth in the MMIC Primary Policy, including the definitions referenced in the preceding paragraphs.

**C.    Federal's Fiduciary Liability Policy**

20.     Federal issued a Health Care Portfolio to Meriter that provided a variety of different forms of insurance coverage.  One form of coverage was Fiduciary Liability Coverage. Federal issued Fiduciary Liability Coverage to Meriter for the policy period October 1, 2009 to October 1, 2010 (Policy No. 8159-7812), attached as **Exhibit 3**.

21.      The applicable limits of Fiduciary Liability Coverage were $10 million for each "fiduciary claim" and $10 million for each policy period.

22.     Federal's Fiduciary Liability Coverage contained two insuring clauses.  The first insuring clause states as follows:

> The Company shall pay, on behalf of the Insureds, Loss for which the Insureds become legally obligated to pay on account of any Fiduciary Claim first made against the Insureds during the Policy Period, or, if exercised, during the Extended Reporting Period, for a Wrongful Act committed, attempted, or allegedly committed or attempted before or during the Policy Period by such Insureds, or

> by any person for whose Wrongful Acts the Insureds are legally responsible, but only if such Fiduciary Claim is reported to the Company in writing in the manner and within the time provided in Subsection 10 of this coverage section.

23. Federal's Fiduciary Liability Coverage defined "Loss" to mean "the amount that any Insured becomes legally obligated to pay on account of any covered Fiduciary Claim, including but not limited to damages, judgments, settlements, pre-judgment and post-judgment interest, Defense Costs, and, solely with respect to Insuring Clause 2, Settlement Fees."

24. Federal's Fiduciary Liability Coverage defined "Fiduciary Claim" to include "a civil proceeding commenced by the service of a complaint or similar pleading . . . against any Insured for a Wrongful Act, including any appeal therefrom."

25. Federal's Fiduciary Liability Coverage defined "Wrongful Act" to mean as follows:

> (a) any breach of the responsibilities, obligations or duties imposed by ERISA upon fiduciaries of the Sponsored Plan committed, attempted, or allegedly committed or attempted by an Insured in the Insured's capacity as such;
>
> (b) any negligent act, error or omission in the Administration of any Plan committed, attempted or allegedly committed or attempted by an Insured in the Insured's capacity as such; or
>
> (c) any other matter claimed against an Insured solely by reason of the Insured's service as a fiduciary of any Sponsored Plan.

26. According to the Fiduciary Liability Coverage, Federal had a "duty to defend any Claim covered by this coverage section, even if any of the allegations in such Claim are groundless, false or fraudulent."

27. Federal's Fiduciary Liability Coverage also included the following "other insurance" clause:

If any **Loss** under this coverage section is insured under any other valid insurance policy(ies), then this coverage section shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the applicable retention or deductible and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this coverage section. Any payment by **Insureds** of a retention or deductible under such other insurance shall not reduce, by the amount of such payment which would otherwise have been covered under this coverage section, the applicable Retention under this coverage section.

**D. The Class Action Lawsuit.**

28. On July 30, 2010, Tammy Boyd, on behalf of herself and a proposed class of others, filed a Class Action Complaint against Meriter and the Meriter Health Services Employee Retirement Plan (the "Plan"). This was the first pleading in the Class Action and is attached here as **Exhibit 4**.

29. The Class Action Complaint alleged numerous ERISA violations by Meriter, including errors that could fall into administrative errors and breaches of fiduciary duties. For example, the Class Action Complaint alleged that "Defendants made repeated material misstatements and omissions regarding the nature and manner in which they interpreted and applied the account balance and accrued benefit calculation provisions of the Plan." The Complaint further alleged that Defendants violated their fiduciary duties in making the allegedly material misstatements and omissions.

30. The Class Action Complaint also alleged that the Plan was administered in a manner that created a "pattern of repeated Plan amendments" using an interest crediting rate of the greater of 4% or 75% of the Plan's asset returns for the plan year. According to the Class Action Complaint, this alleged pattern made that crediting rate formula a permanent feature of the Plan, resulting in unexpected and unintended increases in plan costs.

31.     The Class Action Complaint also alleged that Meriter's effort to amend the Plan in 2003 violated ERISA because Meriter did not disclose (or adequately disclose) to participants the effect of the amendment on the future accrual of benefits.  The Class Action Complaint asserted that Meriter and the Plan violated ERISA § 204(h) "when reducing the benefits being accrued in future plan years."  Based on that alleged violation, the Class Action Complaint alleged that "participants are entitled to the greater of the accrued benefit determined reflecting such change, and the accrued benefit determined not reflecting such change."  Thus, the Complaint alleged that Meriter's administrative errors in communicating the impact of the amendment to participants voided benefit formula changes under the plan amendment and thereby increased the plan costs.

32.     On April 7, 2011, Ms. Boyd, on behalf of herself and a proposed class of other, filed an Amended Class Action Complaint (the "Amended Complaint").  A true and correct copy of the Amended Complaint (without exhibits) is attached as **Exhibit 5**.

33.     The Amended Complaint expanded on the allegations in the Class Action Complaint and made additional allegations against Meriter.

34.     With respect to the 2003 amendment of the Plan, the Amended Complaint alleged that Meriter did not amend the Plan with an executive written instrument as required by Section 10.1 of the Plan until 2009.  Ms. Boyd and the proposed class alleged that the administrative errors and omissions  Meriter committed in trying to document, communicate and implement the 2003 changes violated ERISA and entitled plaintiffs to continue to have rights under the pre-amendment terms of the Plan until 2009.  Such an allegation, if proved, meant that the administrative error in not "dotting the i's and crossing the t's" in amending the plan unintentionally increased participants' benefits.

35. The Amended Complaint also alleged that Meriter's and the Plan's ERISA 204(h) notice failed to provide participants with sufficient information to allow them to understand the effect of the Plan amendment. Such an allegation impugned both Meriter's fiduciary duties and administration of the plan.

36. In addition to the ERISA § 502 claims, the Amended Complaint also alleged that Meriter and the Plan breached their fiduciary duties to participants and their beneficiaries under ERISA § 404.

37. The Amended Complaint also alleged that the Plan was administered in manner that created a "pattern of repeated Plan amendments" using an interest crediting rate of the greater of 4% or 75% of the Plan's asset returns for the plan year. According to the Amended Complaint, this alleged pattern made that crediting formula a permanent feature of the Plan, resulting in an unexpected and unintended increase in plan costs that was not required by the plan as written.

38. Counts I-V of the Amended Complaint, all include errors in "administration," as that term is defined in the MMIC policies.

39. Counts I-VI of the Amended Complaint, include breaches of fiduciary duty as defined by the Federal policy.

40. The district court stated that the Amended Complaint's claims under ERISA § 502 could be "roughly grouped into the following three categories": (1) administration of the Plan prior to its amendment; (2) amendment of the Plan, including providing proper notice of that amendment; and (3) post-amendment administration of the Plan.

**E. Meriter's Tender of the Class Action and The Insurers' Responses.**

41.     Shortly after the Class Action Complaint was filed, Meriter tendered the suit to Federal for a defense.  Federal agreed to provide Meriter a defense under a reservation of rights.

42.     In mid-November 2010, Meriter tendered the Class Action Complaint to MMIC for a defense.  MMIC did not immediately accept Meriter's tender.

43.     On or about February 18, 2011, MMIC sent a letter to Meriter acknowledging potential coverage for claims in the Class Action and agreeing to defend Meriter in that suit, attached as **Exhibit 6.**

44.     In the February 2011 letter, MMIC stated as follows:

> It is possible that some of the acts complained of arise out of the "administration" of the plan.  Specifically, there is an allegation that the beneficiaries were improperly advised of the operation of the 2003 plan amendment that had the effect of reducing the benefits that would be accrued in future years.  It is possible that the court would find that such failure was "giving counsel" to the beneficiaries or "interpreting" plan.  Because this claim, if approved, potentially covered, MMIC will agree to defend you in this matter.

45.     MMIC's February 18, 2011 letter admitting its duty to defend also stated that if any of the complained of acts fell under the definition of "administration," MMIC will also indemnify a portion of the attorney's fees claim, but would be responsible for only that portion of the attorney's fees that could be attributed to the successful claims arising out of the covered "administration" conduct.

46.     In the February 2011 letter, MMIC incorrectly claimed that its "other insurance" clause conflicted with the "other insurance" clause in Federal's policy.  As a result of this alleged conflict, MMIC asserted that Meriter's defense fees in the Class Action should be shared between MMIC and Federal.

47. Despite acknowledging its duty to defend, MMIC, failed to fulfill its obligation because it did not contribute any monies towards Meriter's ongoing defense for several months.

48. In a letter dated June 20, 2011, attached as **Exhibit 7**, MMIC's counsel acknowledged that MMIC "arguably has a duty to defend" Meriter under the Amended Complaint. MMIC, however, claimed it only had a potential duty to defend only one count, Count III, and again incorrectly claimed that it did not have the primary duty to defend Meriter. In fact, however, Counts I-V of the Amended Complaint allege administrative errors by Meriter that trigger MMIC's duty to defend.

49. Federal claimed, in letters of July 6, 2011 and August 17, 2011 (attached as **Exhibits 8 and 9**, respectively) that MMIC had to reimburse all of Federal's defense costs to date and to assume responsibility for all defense costs going forward. Federal, for its part, claimed it had the defense duty for all claims, but that it only had potential indemnity obligations for Counts III, V, and VI.

50. In fact, however, Counts I-V triggered MMIC and Federal's defense and indemnity obligations. Only Count VI, seeking recovery for alleged breach of fiduciary duty, did not trigger the MMIC policy.

51. Under the applicable state law (Wisconsin), Federal put MMIC on notice that MMIC would have the primary duty to defend the entire claim. *See* **Exhibit 8**, July 6, 2011 letter, pp. 2-3 citing *Doyle v. Engelke*, 580 N.W.2d 245 (Wis. 1998) (holding that insurer whose policy covers even one claim must defend entire action) and *Riccobono v. Seven Star, Inc.*, 610 N.W.2d 501 (Wis. Ct. App. 2000) (holding that where the other insurance provision in one policy was "pro rata" and the other insurance provision in the other policy was "excess," the Court could

give effect to both, finding the carrier with the pro rata language primary and the carrier with the excess language excess).

52. Despite receiving notice from Federal of its duty to defend the entire action and to take the primary defense obligation, MMIC continued to refuse to pay any defense expenses until late October 2011.

53. In September, 2011, MMIC contacted Meriter requesting a meeting to discuss insurance issues. MMIC did not indicate that its position had changed in any material respect from its February 18, 2011 or its June 20, 2011 letters.

54. MMIC's communications with Meriter led to the scheduling of a meeting between Meriter and MMIC on October 20, 2011 at Meriter's offices in Madison, Wisconsin. Again, MMIC gave no indication that it had changed its position conceding its duty to defend Meriter in the class action.

55. On October 18, 2011, MMIC unexpectedly reversed its position on its obligations to Meriter, writing as follows: "While MMIC previously determined that it has a duty to defend, it has now concluded that it does not have such a duty." MMIC offered this statement despite acknowledging that "certain of the conduct alleged in the complaint might constitute covered administration, notably those alleging communication of any accurate information or failure to communicate accurate information to participants."

56. On the same day as its flip-flop letter (attached as **Exhibit 10)**, MMIC filed a lawsuit in this Court seeking a declaratory judgment that MMIC had no duty to defend and indemnify Meriter in connection with the Class Action. That lawsuit was styled *MMIC Insurance, Inc. v. Meriter Health Services, Inc., et al.*, Case No. 11-cv-716 (W.D. Wis.).

Obviously, this suit was filed before Meriter had any realistic chance to even respond to MMIC's bad-faith attempt to withdraw its duty to defend and therefore was itself filed in bad faith.

57.     This lawsuit threatened Meriter's defense in the class action by potentially piercing the common interest that had existed between Meriter and its insurers and exposing the communications between Meriter and its insurers to class counsel in the Class Action.  MMIC's lawsuit further harmed Meriter because such coverage litigation provided class counsel an opportunity to seek further discovery through the coverage action (where the class representative is a named defendant).

58.     In an effort to mitigate the consequences of MMIC's suit, Meriter, MMIC and Federal entered into an Agreement to address cost-sharing and the dismissal of MMIC's declaratory judgment action (the "Interim Agreement").

59.     Under the Interim Agreement, Federal and MMIC agreed to each pay 50% of the defense fees Meriter incurred in the Class Action, subject to the right to litigate their respective defense obligations in a later setting.

60.     In the Interim Agreement, Meriter and MMIC agreed that Meriter's claim for coverage of the Class Action fell within the October 1, 2009 to October 1, 2010 policy period of the MMIC Primary Policy and the MMIC Umbrella Policy, not the subsequent 2010-2011 policies.

61.     In the Interim Agreement, MMIC expressly waived and released any defense "it has or may have that Meriter failed to give MMIC timely notice of the [Class Action]."

62.     Pursuant to the Interim Agreement, MMIC agreed to voluntarily dismiss its declaratory judgment action in Case No. 11-cv-716 (W.D. Wis.).

63. While MMIC eventually tendered a check to Federal for one-half of the defense fees expended and a check to Meriter for its deductible expenses, those MMIC payments did not cure its prior breach of the duty to defend because the defense expenses paid by Federal diminish its policy limits (unlike the MMIC policy). Therefore, MMIC's refusal to pay the entire defense expenses diminished Meriter's available insurance coverage.

**F. Resolution of the Underlying Litigation**

64. The district court certified the suit as a class action. On December 4, 2012, the United States Court of Appeals, Seventh Circuit affirmed the district court's class certification decision.

65. In responding to Meriter's Motion for Summary Judgment, Class Plaintiffs took the position that the ERISA violations were due to errors in Meriter's administration and interpretation of the plan, as well as breaches of fiduciary duty.

66. After extensive discovery and the district court's decision on cross-motions for summary judgment, the parties agreed to settle the Class Action. According to the settlement, Meriter agreed to pay $82 million, an appropriate discount off the potential damages (as calculated by both Plaintiffs and Meriter) considering the relative strengths of the claims. The settlement was preliminarily approved by District Court Judge William Conley and was finally approved on January 5, 2015.

67. As settlement discussions progressed in the Class Action, both Federal and MMIC refused to contribute toward the $82 million settlement, leaving Meriter to alone shoulder that entire settlement.

**G. The Insurance Dispute**

68.     In addition to MMIC and Federal disavowing their indemnity obligation to Meriter, there remains a ripe and justiciable controversy with respect to the existence and extent of each insurer's obligation to defend Meriter in the Class Action.

69.     On January 6, 2015, Meriter filed an action against MMIC, Federal, and its attorneys and actuaries in the Dane County Circuit Court in an action styled *Meriter Health Services, Inc. v. Godfrey & Kahn, S.C., et al.* (Dane County Case No. 15-CV-28).

70.     The Defendants in Case No. 15-CV-28 removed that action to this Court.  On November 20, 2015, the Court remanded the action to Dane County Circuit Court for further proceedings.

71.     Upon return to state court, Meriter, MMIC, and Federal entered a stipulation to dismiss their respective insurance claims, without prejudice, in Case No. 15-CV-28 so that they could be refiled in this Court.  On January 15, 2016, the Dane County Circuit Court entered an order confirming the dismissal of the insurance claims in 15-CV-28 so they could be re-filed in this action.

## CAUSES OF ACTION

### COUNT ONE – MMIC Breached Its Duty to Defend

72.     Meriter incorporates the preceding paragraphs as if fully set forth herein.

73.     MMIC had a contractual obligation under the MMIC Primary Policy to defend Meriter against the claims asserted in the Class Action.

74.     The claims and allegations in the original Class Action Complaint and the Amended Complaint fell within the EBAL insuring agreement in the MMIC Primary Policy.  For instance, the class sought damages from Meriter arising from the administration of Meriter's employee benefits program.

75.     To the extent the Class Action sought to recover benefits, those benefits would be covered as "damages" under the MMIC Primary Policy.  EBAL policies in general, and the MMIC Primary Policy in particular, provide coverage for benefits due to administrative errors. Such policies were designed and intended to include coverage for losses or damages (based on the policy language), including benefits, due to errors in plan administration.  MMIC's EBAL Policy reads consistently with that intent, in the following respects:

a.  MMIC excludes fiduciary liability (Excl. (j), p. 8), and in addition excludes failure to provide benefits due to underfunding of the plan or an insurance companies' failure to comply with the terms of its policy (Excl. (e), p. 7), but otherwise covers ERISA liability, including benefits, in the MMIC Primary Policy;

b.  As set forth in both the coverage section and the General Conditions, MMIC covers claims "arising from the administration of the **named insured's employee benefits program.**" (emphasis in original).  There is no exclusion for benefits or any limitation on the inclusion of benefits as "damages" recoverable under the policy;

c.  The umbrella policy excludes all damages arising from claims under ERISA, including benefits.  This exclusion is not present in the MMIC Primary Policy.

d.  MMIC received over $500,000 in premium for the policy coverages.

76.     Wisconsin law also supports the conclusion that a recovery of benefits constitutes damages or loss under an EBAL insurance policy like the one MMIC issued here.  In *Just v. Accu-Turn, Inc.*, Case No. 09-C-0181, 2012 U.S. Dist. LEXIS 42463 (E.D. Wis. Mar. 28, 2012), the court held that damages for non-payment of COBRA benefits was "damages."

77.     There are no exclusions in the MMIC Primary Policy that limit or preclude coverage to Meriter, much less preclude all coverage for all claims that would allow MMIC to evade its obligation to defend Meriter.

78.     Meriter timely reported the Class Action to MMIC.  Indeed, MMIC expressly waived and released any defense "it has or may have that Meriter failed to give MMIC timely notice of the [Class Action]."  Both Meriter and MMIC also agreed that the Class Action claim

fell within the October 1, 2009 to October 1, 2010 policy period of the MMIC Primary Policy and the MMIC Umbrella Policy.

79.    The "retroactive date" in the MMIC Primary Policy does not preclude or limit MMIC's duty to defend Meriter.  The declarations page for the MMIC Primary Policy does not contain any retroactive date reference for EBAL coverage (Part C), unlike the references that exist in Part A ("Retroactive Date: 10/01/2003") and Part B of the MMIC policy ("Retroactive Date: NA").  Because there was no retroactive date reference applicable to EBAL coverage, a retroactive date cannot be used to limit MMIC's obligations to Meriter.

80.    The "other insurance" clause in the MMIC Primary Policy does not allow MMIC to avoid its duty to defend Meriter in the Class Action.  MMIC's other insurance clause is a "*pro rata*" clause.  Federal's other insurance clause, however, is an "excess" clause.  Under Wisconsin law, the Federal policy is excess to the MMIC Primary Policy, making MMIC primarily responsible for Meriter's defense in the Class Action.  *See, e.g.*, *Riccobono v. Seven Star, Inc.*, 610 N.W.2d 501 (Wis. Ct. App. 2000) (holding that where the other insurance provision in one policy was "*pro rata*" and the other insurance provision in the other policy was "excess," the Court could give effect to both, finding the carrier with the pro rata language primary and the carrier with the excess language excess).

81.    Given the allegations in the Class Action pleadings, MMIC had a duty to defend the entire action.  Under Wisconsin law, where even one claim under a lawsuit is covered by an insurer's policy, that insurer must defend the entire action.  *Doyle v. Engelke*, 580 N.W.2d 245 (Wis. 1998).

82. MMIC breached its duty to defend Meriter in multiple respects. First, MMIC did not timely accept Meriter's tender by failing to timely acknowledge its duty to defend and failing to contribute funds towards Meriter's defense of the Class Action.

83. Second, even after initially accepting its duty to defend, MMIC eventually disavowed its obligation to defend and surreptitiously filed a declaratory judgment action that threatened Meriter's defense of the Class Action.

84. Third, MMIC has consistently refused to accept its *primary* duty to defend Meriter in the Class Action and instead attempted to shift its obligations (both in whole and in part) to Federal. MMIC's position has required Federal to advance defense fees, thereby eroding the limits of Federal's coverage available to Meriter for other claims, including the Class Action.

85. MMIC's breach of the duty to defend is material.

86. In contrast to MMIC, Meriter has complied with all of its obligations and the conditions to coverage under the MMIC Primary Policy.

87. As a result of MMIC's breach of its duty to defend, MMIC has waived (or is estopped from raising) any coverage defenses it may have otherwise had available to it, including the limits of coverage included in both its primary and umbrella policies.

88. As a result of MMIC's breach of its duty to defend, Meriter has been damaged in an amount in excess of this Court's jurisdictional minimum. Meriter's damages include, without limitation, the depleted limits of the Federal policies, the attorneys' fees incurred in attempting to force MMIC to accept its coverage obligations, and all or a portion of the underlying settlement in the Class Action litigation.

**COUNT II: MMIC Acted In Bad Faith**

89. Meriter hereby incorporates the preceding paragraphs as if fully set forth herein.

90. MMIC owed Meriter a duty of good faith in connection with the assessment and handling of the Class Action litigation.

91. MMIC breached its duty of good faith to Meriter by refusing, with no reasonable basis for its decision, to promptly and fully defend Meriter in the Class Action litigation. MMIC's bad faith was demonstrated by, among other things, (a) its refusal to acknowledge a bedrock principle of Wisconsin law that an insurer has a duty to defend the entire lawsuit even if only one claim may be potentially covered (and more were covered here); and (b) its refusal to consider controlling Wisconsin law on the application of its "other insurance" clauses.

92. MMIC's bad faith in the handling of the Class Action litigation was a substantial factor in causing damages to Meriter. MMIC's bad faith has caused the unnecessary depletion of the Federal policy limits through Federal's payment of defense fees and costs that should have been solely incurred by MMIC.

93. As a direct and proximate result of MMIC's breach of fiduciary duty, Meriter has been damaged in an amount in excess of this Court's jurisdictional minimum.

**COUNT III: A Declaration that MMIC Has a Duty to Indemnify**

94. Meriter hereby incorporates the preceding paragraphs as if fully set forth herein.

95. MMIC has made it clear that it will not indemnify Meriter for any amounts Meriter has incurred to settle the Class Action. When Meriter, through counsel, inquired whether MMIC would object to a settlement, MMIC responded on July 22, 2014 by saying "Since MMIC is not contributing toward a settlement, I don't feel like I'm in a position to provide input on negotiation strategy." MMIC therefore denied its duty to indemnify. This decision is contrary to the terms and coverages provided for in the MMIC Primary Policy.

96. In particular, the damages paid by Meriter in the Class Action litigation arose, in

whole or in part, from the "administration of [Meriter's] employee benefits program" and thus are covered by Coverage C of the MMIC Primary Policy.

97. There are no exclusions, limitations or conditions on coverage in the MMIC Primary Policy that would limit MMIC's indemnity obligation to an amount less than its policy limits (which should no longer apply due to MMIC's breach of the duty to defend). At a minimum, Meriter is entitled to the full limits of the MMIC Primary Policy as indemnity coverage for the Class Action settlement.

98. There is an actual and actionable controversy between Meriter and MMIC regarding MMIC's obligation to indemnify under its contract or contracts of insurance. MMIC disputes its responsibility for Meriter's damages whereas Meriter contends that MMIC had a duty to indemnify Meriter for its damages in the Class Action litigation.

99. To resolve this controversy between MMIC and Meriter, the Court should declare that MMIC has a duty to indemnify Meriter for all (or, alternatively, a portion) of the damages Meriter paid in conjunction with the settlement of the Class Action litigation.

**COUNT IV: A Declaration that Federal Has a Duty to Indemnify**

100. Meriter hereby incorporates the preceding paragraphs as if fully set forth herein.

101. An actual and actionable controversy between Meriter and Federal also exists regarding Federal's duty to indemnify. On or about October 27, 2014, Meriter's counsel spoke with Federal's counsel and in-house counsel regarding an allocation of the Class Action settlement amount to Federal's fiduciary liability insurance coverage. During that conversation, Federal expressed its views that the entire $82 million settlement constituted benefits, which Federal contends are excluded under its policy from the definition of damages or loss, and that Federal would not agree to pay any indemnify amounts under its policy. Federal confirmed that

coverage position, at Meriter's counsel request, with a letter dated October 31, 2014 confirming its position.

102. Meriter disagrees with Federal's position. An actual controversy exists necessary for adjudication in this Court.

103. Regarding the Class Action, the claims that survived summary judgment were the fiduciary liability claims – claims that are covered under the Federal Fiduciary Liability Policy to the extent that the recoverable damages are not benefits. The fiduciary liability claims in the Class Action were subject to a variety of claims for relief in addition to benefits.

104. Meriter settled the Class Action in return for a release of all claims (including claims that could be reinstated on appeal), not solely claims for benefits.

105. Federal claims that the Class Action settlement agreement allows the participants to claim payments made directly to the participants as benefits. The court, however, is not bound by the characterizations of the parties to the litigation and must make its own objective determination of the relief to the participants, which was characterized as "benefits" in the settlement document to provide the participants with favorable tax treatment. It is clear from the summary judgment ruling that Class Plaintiffs' fiduciary duty claims were a significant portion of the Meriter settlement.

106. In addition, the Class Action settlement includes a claim for attorneys' fees in excess of $20 million, all of which will be paid in cash and is not defined as benefits. Fiduciary liabilities may be paid as damages that are not benefits and, in this case, it is reasonable to determine that at least $10 million of the $82 million settlement constitutes money damages for breach of fiduciary duty.

107.    Federal relied in its letter on comments made by Plaintiff's counsel at hearings in the underlying Class Action.  However, those arguments by Plaintiff's counsel are not binding on this Court, which is charged with making an independent objective judgment regarding the nature of the amounts paid under the Class Action settlement.  In addition, these payments, which include cash payments of over $20 million, were made for a release of all claims, not just claims for benefits.

108.    To resolve this coverage dispute between the parties, the Court should declare the Federal is obligated to indemnify Meriter for that portion of the Class Action settlement falling within Federal's coverage and limits of liability.

**WHEREFORE**, based on the foregoing allegations, Meriter Health Services requests that the Court enter a judgment against the Defendants as follows:

A.      An award of compensatory damages against MMIC on Counts I and II of this Complaint;

B.      A declaration against MMIC that it has a duty to indemnify Meriter for all (or, alternatively, a portion) of the settlement paid by Meriter in the Class Action litigation in Count III of this Complaint;

C.      A declaration against Federal that it has a duty to indemnify Meriter for that portion of the settlement paid by Meriter in the Class Action litigation that is within the limits of the Federal policies in Count IV of this Complaint;

D.      An award to Meriter against each and every Defendant for Meriter's actual costs, attorneys' fees, and disbursements;

E.      Prejudgment interest (both at common law and under Section 628.46, Wis. Stat. against MMIC and Federal); and

F.      Such other relief as the Court may be deem appropriate under the circumstances.

Dated this 21st day of January, 2016.

By: s/David J. Turek
David J. Turek

J. Ric Gass
Michael B. Brennan
Gass Weber Mullins, LLC
309 N. Water Street, Suite 700
Milwaukee, Wisconsin 53202
Phone: 414-223-3300
Fax: 414-224-6116
turek@gasswebermullins.com
gass@gasswebermullins.com
brennan@gasswebermullins.com