**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| MERITER HEALTH SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:16-cv-52-wmc |
| v. | ) | |
| | ) | |
| MMIC INSURANCE COMPANY | ) | |
| and FEDERAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**Meriter Health Services' Memorandum in Support of its Motion for Partial Judgment
On the Pleadings Concerning MMIC's Duty to Defend**

This motion presents threshold questions of law that can significantly narrow or obviate a substantial majority of the matters in dispute in this case. Plaintiff Meriter Health Services Inc. ("Meriter") was sued in this Court in 2010 on behalf of a putative class of beneficiaries of its employee retirement plan for purported violations of ERISA (the "Class Action"). As this Court is aware, that protracted litigation resulted in an eventual $82 million settlement. As is common among operators of retirement plans, Meriter held both a policy providing fiduciary liability coverage, issued in this case by Defendant Federal Insurance Co. ("Federal"), and a policy providing employee benefits administration liability coverage, issued by Defendant MMIC Insurance Co. ("MMIC"). And, like many ERISA class actions, the Class Action contained fiduciary allegations, of the type covered under a fiduciary liability policy, and administrative allegations, of the type covered under both an employee benefits administration liability policy and a fiduciary liability policy. Given the potential coverage under both policies, Meriter sought coverage for the Class Action from both MMIC and Federal.

While Federal promptly agreed to defend Meriter, and did so through the entirety of the

Class Action, MMIC did not.  Despite issuing what should be deemed the primary policy, MMIC initially acknowledged a duty to defend Meriter, but refused to pay any defense costs, and then only a small portion of those defense costs.  During this time, Meriter was afforded a defense only because Federal covered the costs of defense that MMIC should have been paying.  Because defense costs eroded the limit of liability of Federal's policy—which is not the case with MMIC's policy—MMIC's decision depleted the total amount of coverage available under Federal's policy in the first place.  MMIC then reversed course and asserted that it had no duty to defend Meriter at all.  Eventually, the parties entered into an interim agreement that allowed the carriers to split costs while the Class Action was pending, and provided that the parties would leave for another day the issue of litigating the scope of each insurer's duty to defend.

That day has arrived.  The interim agreement contemplated this coverage litigation, which could only be brought after the Class Action was resolved.  While issues concerning MMIC's bad faith conduct and its duties to defend and indemnify are all at issue in this case,[1] this motion seeks only a declaration that MMIC owed a complete and primary duty to defend Meriter in the Class Action and, therefore, that MMIC is liable to both Meriter and Federal for the damages caused by that breach.  Despite the complexity injected into this case by MMIC's conduct over the past several years, the duty to defend issues can be resolved as a matter of law by straightforward application of settled principles of Wisconsin insurance law.

*First*, Wisconsin follows the so-called "four corners" rule with no exceptions, and compels the Court to look at only the complaint in the Class Action and MMIC's policy to determine the existence and scope of MMIC's duty to defend.  Under any reasonable analysis of these documents, it is clear that the allegations in the Class Action concerned non-fiduciary

---

[1] Meriter has dismissed all of its counts against Federal in this litigation.  *See* ECF No. 36.

administrative errors that at least could potentially fall within the coverage offered by the MMIC Policy. Indeed, MMIC itself admitted in its prior coverage correspondence that a claim alleging "that the beneficiaries were improperly advised of the operation of the 2003 Plan amendment" was potentially covered, which is why MMIC initially concluded that it had a duty to defend.

*Second*, the "other insurance" clause of Federal's policy provides that it is excess to MMIC's policy both with respect to its defense and any indemnity obligations. Wisconsin courts enforce such "other insurance" provisions in situations, like here, where two policies insure the same risk at the same time. The Federal policy and the MMIC policy both provide coverage for non-fiduciary errors in administration to the same insured for the same time period, and the Federal policy is therefore "excess" under established Wisconsin law. Thus, MMIC had the primary and exclusive duty to defend Meriter in the Class Action.

*Third*, MMIC cannot escape its primary defense obligation to Meriter by arguing that the Court should somehow equitably divide defense costs between Federal and MMIC. In order for the Court to do so, it would need to disregard longstanding, established Wisconsin precedent requiring an insurer with a duty to defend one count in a complaint to defend all counts in a complaint. Moreover, MMIC agreed to reimburse Federal for 100% of defense costs Federal advanced if it were determined in later coverage litigation that MMIC owed a primary defense obligation to Meriter, which is the case here.

As demonstrated below, these inescapable facts show that MMIC is liable to Meriter for breaching its duty to defend, and that MMIC is liable to Federal by reason of the interim agreement that the parties signed. Wisconsin courts regularly grant motions concerning the scope of an insurer's duty to defend at the motion for judgment on the pleadings stage, and the Court should do so in this case to narrow the issues in dispute.

3

**Background**

**I.     The Class Action Asserts both Fiduciary and Administrative Claims Against Meriter.**

The Class Action, filed in this Court on July 30, 2010, generally asserted purported ERISA violations by Meriter and its retirement plan (the "Plan").[2]  *E.g.*, Complaint, ¶¶ 28-29, ECF No. 1 ("Meriter Complaint"); MMIC Counterclaim, ¶ 28, ECF No. 26 ("MMIC Counterclaim").  The putative Class filed an amended complaint several months later that contained similar, but more detailed, allegations (the "Amended Complaint," or the "Class Action Complaint").  Meriter Complaint ¶¶ 32-33, ECF Nos. 1.  As MMIC acknowledged in no less than three pleadings filed with this Court last year,[3] and as is evident from a review of the plain language of the pleadings, the Class Action Complaint can be read to allege three types of liability: "[1] improper actions or omissions by the Plan Sponsor, Meriter, in defining and modifying the terms of the Plan, [2] breaches of fiduciary duty under ERISA in administering the Plan, and [3] nonfiduciary errors in administering the Plan."  Federal Crossclaim, ¶ 28, ECF No. 18 ("Federal Crossclaim") (quoting Case No. 15-cv-87 at ECF No. 48, ¶ 50 & ECF No. 76, ¶ 50 & ECF No. 84, ¶ 50); *accord* Meriter Complaint ¶¶ 28–33, ECF No. 1.  Thus, the Class Action alleged both fiduciary and non-fiduciary wrongdoing.  Meriter Complaint ¶ 29, ECF No. 1.

For instance, the Class asserted that Meriter and the Plan "made repeated material

---

[2] The Class Action was originally filed by Tammy Boyd on behalf of herself and a putative class, but Boyd was eventually removed and replaced with a number of other class representatives.  *See* Meriter Complaint ¶ 1 n.1, ECF No. 1.  A reference to "Plaintiffs" in this brief refers to either set of class representatives, and a reference to "the Class" refers to the allegations made by the named plaintiffs or the putative class.

[3] On a motion for judgment on the pleadings, the Court may consider briefs and pleadings filed in prior litigation, as they are matters of public record.  *See, e.g.*, *Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 545 F. Supp. 2d 845, 847 (E.D. Ark. 2008) ("briefs and opinions of other jurisdictions" may be considered on a motion to dismiss, which uses the same standard as a 12(c) motion).  In addition, these pleadings may be cited because they are referenced in the Federal Counterclaim.  *See infra* Argument § I.A.

misstatements and omissions regarding the nature and manner in which they interpreted and applied the account balance and accrued benefit calculation provisions of the Plan" when they were "communicating with participants regarding the Plan and their Plan benefits."  Original Class Complaint ¶ 69, ECF No. 1-4.  The Class asserted that such misstatements and omissions "violated [Meriter's and the Plan's] fiduciary duties," *and* their independent "obligation to provide participants with accurate, non-misleading and comprehensive summary plan descriptions."  *Id.*  The Class also alleged that Meriter erred by failing to follow proper procedures when attempting to amend the Plan in 2003.  Meriter Complaint ¶ 34, ECF No. 1; Class Action Complaint ¶¶ 101–105, ECF No. 1-5.  As a result of this alleged administrative error, the Class accused Meriter of improperly describing the Plan to Plan beneficiaries, and similarly asserted that Meriter and the Plan never distributed a notice compliant with ERISA § 204(h) that would allow the beneficiaries to understand the Plan.  Class Action Complaint ¶ 110, ECF No. 1-5.  The Class claimed these failures violated both Meriter's and the Plan's fiduciary and non-fiduciary duties.  *Id.* ¶¶ 156–157, 207-209.

Based on these allegations, the Class sought relief under ERISA § 502 in five of the six counts asserted in the Class Action Complaint.  *See* Class Action Complaint ¶¶ 192–209, ECF No. 1-5. As this Court observed in summarizing the Class's claims, "Plaintiffs' § 502 claims can be roughly grouped into the following three categories: (1) administration of the Plan pre-amendment; (2) amendment of the Plan, including providing proper notice of that amendment; and (3) post-amendment administration of the Plan."  Meriter Complaint ¶ 40, ECF No. 1 (citing Case No. 15-cv-87 at ECF No. 415 ("July 3, 2014 Order") at 6).  In addition to these § 502-based counts, the sixth count in the Class Action Complaint asserted violations of ERISA § 404, "which defines certain fiduciary duties" imposed upon the Plan.  Class Action Complaint ¶¶

207–209, ECF No. 1-5; *see also* July 3, 2014 Order at 6–8.  Indeed, while one count in the Class

Action Complaint was captioned "Breach of Fiduciary Duty," the other five counts were not.

*See* Class Action Complaint ¶¶ 192–209, ECF No. 1-5.

## II.    The MMIC and Federal Insurance Policies.

Meriter purchased two liability insurance policies to cover risks associated with its

employee benefits plans for the October 1, 2009 to October 1, 2010 policy period.  First, Meriter

obtained a primary policy from MMIC (the "MMIC Policy").[4]  In Coverage C, the MMIC Policy

provides Health System Employee Benefits Administration Liability ("EBAL") coverage.

MMIC Policy at 34-42, ECF No. 1-1.  The MMIC Policy's EBAL insuring agreement requires

MMIC to defend any suit alleging "**damages** because of any **claim** or **claims** . . . arising from

the "**administration** of the **named insured's employee benefits program**."[5]  Meriter Complaint

¶ 9, ECF No. 1 (quoting MMIC Policy at 34 of 47, ECF No. 1-1).  MMIC agreed to defend "any

suit . . . even if any of the allegations of the suit are groundless, false, or fraudulent."  *Id.* at ¶ 10,

ECF No. 1 (citing MMIC Policy at 34 of 47).

The MMIC Policy covers "**damages**," meaning "all amounts of money [sic] are payable to

compensate for loss because of injury to which this insurance applies."  *Id.* at ¶ 11, ECF No. 1

(citing MMIC Policy at 38 of 47, ECF No. 1-1).  "**Administration**" means any of the following

acts authorized by Meriter: "(a) giving counsel to employees with respect to the **employee**

**benefits program**; (b) interpreting the **employee benefits program**; (c) handling of records and

---

[4] As noted in the MMIC Counterclaim, MMIC also issued an Umbrella Policy for the same period that provides specified excess coverage to the MMIC Policy.  But unlike the MMIC Policy, the MMIC Umbrella Policy excludes all "liability based upon [ERISA]."  MMIC Counterclaim ¶ 18, ECF No. 26 (quoting ECF No. 1-2 at 11 of 24).  The MMIC Umbrella Policy is thus narrower in scope than the MMIC Policy, which excludes only coverage for *breaches of fiduciary duty* under ERISA.  MMIC Counterclaim ¶ 10, ECF No. 26 (quoting MMIC Policy at 35 of 47).

[5] Unless otherwise noted, all **bolded** terms in this brief reflect the bolded definitions in the MMIC Policy and the Federal Policy.

processing of benefits in connection with the **employee benefits program**; or (d) enrolling, terminating or cancelling employees under the **employee benefits program**." *Id.* at ¶ 11, ECF No. 1 (citing MMIC Policy at 37 of 47, ECF No. 1-1).  The MMIC Policy also contains a "pro rata" "other insurance" clause:

> **Other Insurance**
>
> (a)  If an **insured** has other insurance against a loss arising from other than peer review services, but covered by this policy, MMIC shall not be liable under this policy for a greater proportion of such loss than the limit of liability stated on the Declarations Page bears to the total limit of liability of all valid and collectible insurance against such loss.
>
> (b)  With respect to loss arising from peer review services, this policy shall apply in excess of any other insurance, self-insurance fund or agreement of indemnification that is applicable to such loss, except that this policy shall be primary insurance for loss arising from any peer review services performed on behalf of MMIC.

Meriter Complaint ¶ 14, ECF No. 1 (quoting MMIC Policy at 44 of 47, ECF No. 1-1).

Second, Meriter obtained a policy from Federal (the "Federal Policy") that provides various coverages, including fiduciary liability coverage.  Meriter Complaint ¶ 20, ECF No. 1 (citing Federal Policy, ECF No. 18-1[6]).  A key distinction between the two policies is that, unlike the MMIC Policy, the Federal Policy provides coverage for "**Loss**," which includes "**Defense Costs.**"  Federal Policy at 43 and 65 of 138, ECF No. 18-1.  Accordingly, the costs Federal spent defending the Class Action eroded the total amount of coverage available to Meriter, reducing the amount available to indemnify Meriter for any settlement or judgment in the Class Action. *See id.*

The "**Wrongful Acts**" covered under the Federal Policy include matters claimed against Meriter by reason of its service as a fiduciary, but also any actual or alleged negligent act, error

---

[6] After filing the Federal Policy as an exhibit to its complaint herein, Meriter realized that it inadvertently attached an incomplete copy of the Federal Policy to its complaint.  As such, Meriter refers the Court to the copy of the Federal Policy attached to the Federal Crossclaim at ECF No. 18-1.

or omission in Meriter's "**Administration**" of the Plan.  *Id.* at 46 of 138, ECF No. 18-1.  The

Federal Policy defines **Administration** similarly, but not identically, to the same definition in

the MMIC Policy.  *Id.* at 42 of 138, ECF No. 18-1.

> The Federal Policy contains an "excess" "other insurance" clause that reads:

>> If any **Loss** under this coverage section is insured under any other valid and
>> collectible insurance policy(ies), then this coverage section shall cover such **Loss**,
>> subject to its limitations, conditions, provisions and other terms, only to the extent
>> that the amount of such **Loss** is in excess of the applicable retention or deductible
>> and limit of liability under such other insurance, whether such other insurance is
>> stated to be primary, contributory, excess, contingent or otherwise, unless such
>> other insurance is written only as specific excess insurance over the Limits of
>> Liability provided in this coverage section. . . .

*Id.* at 71 of 138, ECF No. 18-1.

## III.   The Current Coverage Dispute.

One would assume from reading the two background sections above that MMIC and Federal

could perform a straightforward, simple coverage analysis and conclude that since the Class

Action Complaint clearly alleged non-fiduciary administrative errors—which MMIC initially

admitted were covered under both policies—that both MMIC and Federal owed duties to defend

Meriter in the Class Action.  And, since Wisconsin courts have unambiguously held for decades

that one policy with an excess other insurance clause is deemed to be excess to one with a pro

rata other insurance clause, one would also assume that MMIC would have immediately

recognized that its duty to defend was primary to Federal's excess duty.  For its part, Federal

quickly acknowledged its duty to defend Meriter.  *See* Federal Crossclaim at ¶ 13, ECF No. 18

(citing ECF No. 18-9 at 1).

But that is not what happened with MMIC.  The uncontested record evidence attached to the

parties' pleadings demonstrates that over the six-year saga concerning insurance coverage for the

Class Action, MMIC has proceeded in fits and starts, staking out multiple coverage positions

over time that have flatly contradicted each other.

This episode started several months after Meriter tendered the Class Action to MMIC on November 17, 2010.  MMIC Counterclaim ¶ 33, ECF No. 26.  By letter dated February 18, 2011, MMIC initially acknowledged that it had a duty to defend, stating:

> It is possible that some of the acts complained of arise out of the "administration" of the plan.  Specifically, there is an allegation that the beneficiaries were improperly advised of the operation of the 2003 Plan amendment that had the effect of reducing the benefits that would be accrued in future years.  It is possible that the court would find that such failure was "giving counsel" to the beneficiaries or "interpreting" Plan.  Because this claim, if approved, is potentially covered, MMIC will agree to defend you in this matter.

Meriter Complaint ¶ 44, ECF No. 1 (quoting ECF No. 1-6 ("February 2011 Letter") at 5 of 7).  But, MMIC inexplicably asserted without citation to authority that "[Federal's] excess language is in conflict with MMIC's pro rata other insurance language, and in such situations courts hold that defense costs should be shared."  February 2011 Letter at 6, ECF No. 1-6.  While some courts in other states may see things differently, it is well-established in Wisconsin that an "excess" other insurance policy is just that—excess—to a policy with a "pro rata" other insurance clause.  Meriter Complaint ¶ 80, ECF No. 1.

Despite acknowledging a duty to defend, MMIC did not contribute anything to Meriter's defense for several months.  Meriter Complaint ¶ 47, ECF No. 1.  In the back and forth with Federal, MMIC continued to acknowledge (through coverage counsel) that it had a duty to defend (at least "arguably"), but asserted that it should only pay a small percentage of the defense costs.  Meriter Complaint ¶ 48, ECF No. 1 (citing June 20, 2011 Letter, at ECF No. 28-2[7]).  As Federal noted, this assertion was dubious, as Wisconsin follows the clear weight of

---

[7] Meriter inadvertently attached a different exhibit in place of this letter referenced in its complaint. However, Meriter corrected this mistake in its Brief in Opposition to MMIC's Motion to Dismiss Bad Faith Claim.  (Meriter Brief at 4 n.3, ECF No. 28 and 28-2).  The Court can consider the June 20, 2011 letter in this motion because it was referenced in the Meriter Complaint.

authority nationwide in concluding that an insurer with potential coverage for one count owes a duty to defend the entire complaint.  Meriter Complaint ¶ 51, ECF No. 1 (citing July 6, 2011 Letter at 2, ECF No. 1-8 and *Doyle v. Engelke*, 580 N.W.2d 245 (Wis. 1998)).  Even though Federal maintained its duty was entirely excess, it nonetheless provided a full defense to Meriter while MMIC refused to contribute towards the defense.  *See* Meriter Complaint ¶ 49 (citing ECF Nos. 1-8 and 1-9).

After several months of back-and-forth communications, MMIC abruptly reversed course, asserting that "[w]hile MMIC previously determined that it has a duty to defend, it has now concluded that it does not have such a duty."  Meriter Complaint ¶ 55, ECF No. 1 (citing ECF No. 1-10 ("October 2011 Letter") at 1).  MMIC's letter was internally incoherent, as the letter elsewhere acknowledged that "certain of the conduct alleged in the Complaint might constitute covered **administration**, notably those alleging communication of inaccurate information or failure to communicate accurate information to participants."  *Id.* (citing October 2011 Letter at 6, ECF No. 1-10).  In the letter, MMIC also flip-flopped on whether the Class Action included damages covered by the MMIC Policy, asserting that none of the requested attorneys' fees fell within the definition of **damages**.  *Compare* October 2011 Letter at 6–7, ECF No. 1-10 *with* February 2011 Letter at 6, ECF No. 1-6 (conceding that "MMIC would . . . indemnify a portion of the attorney's fees claim" that was attributable to the covered claims).  The letter also dropped the assertion that MMIC was responsible for only a small portion of Meriter's defense costs.  Rather, MMIC asserted that it now was responsible for *none* of Meriter's defense costs, but nevertheless would "offer a defense under full reservation of rights."  October 2011 Letter at 6, ECF No. 1-10.  Despite this position, MMIC tendered a check to Federal for only about half of the defense costs.  MMIC Counterclaim ¶ 37, ECF No. 26.

10

On the same day of its flip-flop letter, MMIC filed suit in this Court against Meriter and Federal seeking a declaratory judgment that MMIC had no duty to cover the Class Action. *See* Meriter Complaint ¶ 56, ECF No. 1 (citing *MMIC Insurance, Inc. v. Meriter Health Services, Inc.*, et al., Case No. 11-cv-716 (W.D. Wis.)). That lawsuit was a shock to Meriter and threatened its defense in the Class Action by exposing Meriter's communications with its insurers to discovery and allowing aggressive class counsel to seek further discovery from Meriter through the coverage action. Meriter Complaint ¶ 57, ECF No. 1.

To mitigate the consequences of MMIC's suit and put off any coverage dispute to a later date, MMIC, Meriter, and Federal entered into an interim funding agreement (the "Interim Agreement"). *E.g.*, MMIC Counterclaim ¶ 58, ECF No. 26 (citing ECF No. 26-8). The Interim Agreement provided for dismissal of the coverage lawsuit that MMIC filed, and anticipated that further coverage litigation might follow after the entry of a final judgment or settlement in the Class Action. Interim Agreement ¶ 6, ECF No. 26-8. The Interim Agreement included broad mutual reservations of rights, except MMIC waived any late notice defense and agreed that the MMIC Policy (and not any successor policy) was the policy that would provide coverage, if at all. *Id.* ¶¶ 3, 5, 7.

The Interim Agreement also provided a stopgap solution to the defense responsibilities of MMIC and Federal: it stated "Federal and MMIC will each advance 50% of the reasonable and necessary defense fees and expenses incurred on behalf of Meriter and the Plan in the [Class] Action pending the completion of the [Class] Action or an order adjudicating Federal's and/or MMIC's respective obligations, if any, to defend the [Class] Action, whichever occurs first." *Id.* ¶ 2.

The parties also agreed that the Interim Agreement provided for a right of reimbursement

from either party should this Court decide in future coverage litigation that one party or the other

had the primary responsibility to defend Meriter:

> If it is adjudicated that MMIC has no duty to defend, Federal agrees to pay MMIC
> the amounts MMIC advanced for the defense, subject to all applicable limitations
> in the Federal Policy including any applicable limitation of liability. If it is
> adjudicated that MMIC is obligated to pay 100% of the defense fees and expenses
> incurred in the Boyd Action, MMIC agrees to pay Federal the amounts Federal
> has advanced for fees and expenses incurred on or after November 17, 2010,
> subject to all applicable limitations in the MMIC Primary Policy including any
> applicable limitation of liability.

*Id.* ¶ 4. The parties generally agree that Federal and MMIC thereafter each advanced

approximately half of the costs spent defending the Class Action for the duration of the litigation

under the terms of the Interim Agreement. *E.g.*, MMIC Counterclaim ¶¶ 44, 48, ECF No. 26;

Meriter Answer to Counterclaim, ¶¶ 44, 48, ECF No. 29.

## IV.     The Claims in This Dispute.

   In this coverage action, the parties each have filed their own affirmative claims.  The counts

filed by all of the parties can be broken down into the following categories:

- Duty to Defend:  Five counts asserted by the parties in this case address the existence and
  scope of MMIC's duty to defend and its obligation to repay Federal the defense costs that
  it incurred (the "Duty to Defend Counts").  Count I of the Meriter Complaint asserts that
  MMIC breached its duty to defend.  ECF No. 1, ¶¶ 72-88.  Count I of the MMIC
  Counterclaim asserts that the Class Action Complaint did not "make allegations that
  created a duty to defend on the part of MMIC," and that Federal is therefore liable to
  reimburse MMIC for all of its defense costs.  ECF No. 26, ¶¶ 50-54.  Count II of the
  MMIC Counterclaim is pled in the alternative to Count I, and asserts that if both Federal
  and MMIC shared a duty to defend Meriter, the court should apply "equitable principles"
  to decide what MMIC's "fair share of defense costs" would be.  *Id.* at ¶¶ 55-66.  Counts
  I, II, and III of the Federal Crossclaim essentially mirror what is combined into Count I of
  the MMIC Counterclaim, and seek a declaration that MMIC owes a duty to defend the
  entire class action, that that duty was primary, and that MMIC is liable to reimburse
  Federal for all of its defense costs payments.  (ECF No. 18, ¶¶ 38-50).

- Bad Faith:  Count II of the Meriter Complaint asserts that MMIC acted in bad faith by
  failing to offer a complete defense to Meriter in a prompt manner.  That count is currently

the sole subject of MMIC's pending partial motion to dismiss (ECF No. 20).   **This Motion does not address Meriter's bad faith claim.**

- Indemnity:  Count III of the Meriter Complaint seeks a declaration that MMIC has a duty to indemnify for all (or, alternatively, a portion) of the $82 million settlement of the Class Action.   (ECF No. 1, ¶¶ 94-99).   That count is mirrored in Count III of the MMIC Counterclaim, wherein MMIC seeks a declaration that it had no duty to indemnify Meriter in connection with the Class Action settlement.   (ECF No. 26, ¶¶ 67-74).   **This Motion does not address these indemnity claims.**   Finally, Count IV of the Meriter Complaint sought a declaration that Federal had a duty to indemnify.   This count, however, was dismissed on August 25, 2016.  (ECF No. 36).

This motion seeks a determination that MMIC owed a primary duty to defend the Class Action, that it breached that duty, and that it is required to pay 100% of Meriter's defense costs in the Class Action.   Entering such a determination would resolve liability for the five Duty to Defend Counts.   The only remaining issue in the case relating to the duty to defend would be calculating the total amount of defense costs that MMIC must pay to Federal under the Interim Agreement and the amount of damages due to Meriter, such as the fees incurred to establish MMIC's exclusive duty to defend.

In addition, establishing that MMIC owed a complete duty to defend would, at a minimum, resolve a predicate issue in Meriter's bad faith count and its pending duty to indemnify count, as establishing a duty to defend would also establish that there is at least a potential for either bad faith or a duty to indemnify.   While Meriter acknowledges that those counts will not be resolved by this motion, it is clear that a decision in Meriter's favor on this motion would resolve liability on all claims involving Federal and significantly narrow the issues remaining for resolution.

**Argument**

**I.**   **The Court Can Resolve MMIC's Duty to Defend on a Motion for Partial Judgment on the Pleadings.**

"After the pleadings are closed—but early enough not to delay trial—a party may move for

13

judgment on the pleadings." Fed. R. Civ. P. 12(c); *McLaughlin Transp. Sys., Inc. v. Rubinstein*, 390 F. Supp. 2d 50, 57 (D. Mass. 2005) ("partial judgment on the pleadings . . . further[s] the policy goal of efficient resolution of actions . . .") (internal quotation marks omitted).  As all parties have answered the complaint, all counterclaims, and all crossclaims,[8] the pleadings are "closed" in this litigation and this motion for judgment on the pleadings is timely.  *See, e.g.*, *Shield Techs. Corp. v. Paradigm Positioning, LLC*, 908 F. Supp. 2d 914, 916 (N.D. Ill. 2012).  In considering such a motion, a court may rule "based on a review of the pleadings alone, which include the complaint, the answer, and any written instruments attached as exhibits," in addition to documents that are "authentic, referred to in the complaint, and central to the plaintiff's claim."  *Edward E. Gillen Co. v. Ins. Co. of Pennsylvania*, 874 F. Supp. 2d 755, 757 (E.D. Wis. 2012).  The Court may also consider public records without converting the motion into one for summary judgment.  *E.g.*, *GemEx Sys. Inc. v. Andrus Sceales Starke & Sawall LLP*, No. 11-C-0148, 2012 WL 1069704, at *3 (E.D. Wis. Mar. 29, 2012).

"A motion for judgment on the pleadings is subject to the same standards as a Rule 12(b)(6) motion to dismiss."  *Banks v. Fendt*, No. 12-CV-1063, 2013 WL 4046336, at *2 (E.D. Wis. Aug. 8, 2013).  A district court should grant judgment on the pleadings if "'the moving party clearly establishes that no material issue of fact remains to be resolved and he is entitled to judgment as a matter of law.'"  *Anderson v. Garcia*, No. 09-CV-453, 2010 WL 2985655, at *1 (E.D. Wis. July 26, 2010) (quoting *Flora v. Home Federal Savings and Loan Ass'n*, 685 F.2d 209, 211 (7th Cir. 1982)).

Where an insurer's "duty to defend must be discernible from the four corners of the

---

[8] Although MMIC has filed a motion to dismiss Count II of Meriter's complaint—which count is not at issue in this motion—MMIC nonetheless answered Meriter's entire complaint, including Count II.  *See* ECF No. 26, ¶¶ 89–93.

14

complaint" as compared with the language of the insurance policy, it is proper to consider whether an insurer has such a duty in a motion for judgment on the pleadings. *Custom Mach. Design, Inc. v. W. Bend Mut. Ins. Co.*, 182 Wis. 2d 511, 514 N.W.2d 879 (Ct. App. 1994) (upholding grant of motion for judgment on the pleadings).   In addition, a partial motion for judgment on the pleadings addressing only the duty to defend is proper where, as here, a complaint implicates the sufficiency of an insurer's duty to defend. *See, e.g.*, *B.A. v. Bohlmann*, No. 09-CV-346-BBC, 2009 WL 3270124, at *3 (W.D. Wis. Oct. 8, 2009) (stating that it was permissible for party to file partial motion for judgment on the pleadings addressing an insurer's duty to defend but not indemnify); *see also, e.g.*, *Utica Mut. Ins. Co. v. David Agency Ins., Inc.*, 327 F. Supp. 2d 922, 932 (N.D. Ill. 2004) (considering and granting motion for judgment on the pleadings to establish that insurer owed duty to defend); *Nautilus Ins. Co. v. Don's Guns & Galleries, Inc.*, No. IP 99-0735-C-Y/G, 2000 WL 34251061, at *4 (S.D. Ind. Jan. 26, 2000) (same).   A motion for judgment on the pleadings also makes sense because only two items are relevant to assessing MMIC's duty to defend—the Class Action complaints and MMIC's insurance policies—both of which are attached to Meriter's Complaint in this action. *See Marks v. Houston Cas. Co.*, 881 N.W.2d 309, 322 (Wis. 2016).

Moreover, "[t]he interpretation of an insurance policy is a question of law . . . controlled by the same rules of construction as are applied to other contracts." *Smith v. Atl. Mut. Ins. Co.*, 456 N.W.2d 597, 598 (Wis. 1990).   Courts "construe insurance policies to give effect to the intent of the parties as expressed in the language of the policy." *Jackelen v. Russell*, 873 N.W.2d 265, 269 (Wis. App. 2015).   However, a court's interpretation of disputed policy language should "further the insured's expectations of coverage." *Aasen-Robles v. Lac Courte Oreilles Band of Lake Superior Chippewa Indians*, 671 N.W.2d 709, 714-15 (Wis. App. 2003).   Moreover,

Wisconsin law recognizes the imbalance in the insurer-insured relationship, as "[i]nsurers have the advantage over insureds because they draft the contracts." *Folkman v. Quamme*, 665 N.W.2d 857, 865 (Wis. 2003); *see also Burgraff v. Menard, Inc.*, 875 N.W.2d 596, 602 (Wis. 2016) (noting that "the insurer is in a position to write its insurance contracts with the exact language it chooses").   As such, "[l]anguage in an insurance policy is construed as understood by a reasonable person in the position of an insured rather than as intended by the insurer" in order to further the insured's "reasonable expectations of coverage." *Frost ex rel. Anderson v. Whitbeck*, 654 N.W.2d 225, 230 (Wis. 2002); *see also Folkman*, 655 N.W.2d at 865 ("courts construe ambiguities in coverage in favor of the insureds and narrowly construe exclusions against insurers").

Given that all of the relief sought herein turns on the interpretation of the MMIC Policy, the Federal Policy, the Class Action Complaint, and the Interim Agreement, all of which were attached to the pleadings, this motion is ripe for resolution on a motion for judgment on the pleadings.

## II.   MMIC Owed a Duty to Defend Meriter Against the Class Action Complaint.

The standards concerning an insurer's duty to defend under Wisconsin law are long-established and well-defined.   "The duty to defend is broader than the duty to indemnify," because "the former implicates arguable, as opposed to actual, coverage." *Preisler v. Gen. Cas. Ins. Co.*, 857 N.W.2d 136, 142 (Wis. 2014).   In a detailed analysis from this past term, the Wisconsin Supreme Court "unequivocally" held that "there is no exception" whatsoever to the "four corners rule," under which "an insurer's duty to defend, regardless of its origin, depends on a comparison of the four corners of the underlying complaint to the terms of the policy." *Water Well Sols. Serv. Grp., Inc. v. Consol. Ins. Co.*, 881 N.W.2d 285, 294-95 (Wis. 2016) (holding that

16

the "four corners rule" was consistent with nearly all Wisconsin caselaw, and overruling one case to the contrary).  Under recent precedent, there is no debate that the "four corners rule" applies when determining if an insurer has breached its duty to defend.  *Marks*, 881 N.W.2d at 322 (explaining that four-corners rule applies when "courts [are] examining whether an insurer has breached its duty to defend its insured"); *Olson v. Farrar*, 809 N.W.2d 1, 8 (Wis. 2012) ("The four-corners rule is also implicated in situations where it is asserted that the insurer breached the contract by wrongly refusing to provide a defense."); *see also, e.g.*, *U.S. Fire Ins. Co. v. Green Bay Packaging, Inc.*, 66 F. Supp. 2d 987, 996 (E.D. Wis. 1999) ("based on the complaint, there was a duty to defend notwithstanding the subsequent course of the litigation").

The Wisconsin Supreme Court has made clear that an insurer that tries to escape its duty to defend carries a heavy burden.  A court must "resolve any doubt regarding the duty to defend in favor of the insured." *Air Eng'g, Inc. v. Indus. Air Power, LLC*, 828 N.W.2d 565, 569 (Wis. Ct. App. 2013).  Similarly, a court must "liberally" construe allegations in favor of coverage. *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 660 N.W.2d 666, 674 (Wis. 2003).  Put another way, a court must "assume all reasonable inferences" in favor of coverage.  *Doyle v. Engelke*, 580 N.W.2d 245, 248 (Wis. 1998).  The bottom line is that an insurer has a duty to defend even if coverage is only "arguable" or "fairly debatable." *Sisson v. Hansen Storage Co.*, 756 N.W.2d 667, 676 (Wis. Ct. App. 2008).

Finally, "[w]here an insurer's policy provides coverage for even one claim made in a lawsuit, that insurer is obligated to defend the entire suit." *Doyle v. Engelke*, 580 N.W.2d 245, 249 (1998).  Although some of MMIC's pre-suit coverage correspondence ignored this principle of law, MMIC appeared to concede the validity of this well-established rule in multiple prior pleadings filed with this Court.  *See* Case No. 15-cv-87 at ECF No. 48 ¶ 50, ECF No. 76 ¶ 50,

17

ECF No. 84 ¶ 50 (stating, in the three answers it filed in the prior coverage litigation, that "[a] duty to defend any claim requires the insurer to defend the entire action.").

    A.    **The Class Action Complaint alleged non-fiduciary administrative errors that fall within the MMIC Policy's insuring agreement.**

In determining whether there is a duty to defend, the Court must first consider "whether the insuring agreement makes an initial grant of coverage." *Estate of Sustache v. Am. Family Mut. Ins. Co.*, 751 N.W.2d 845, 851 (Wis. 2008). Here, both the Original Complaint and the Class Action Complaint contain allegations falling within the MMIC Policy's insuring agreement—specifically, both pleadings include a "claim or claims . . . arising from the **administration** of [Meriter's] **employee benefits program**." MMIC Policy at 34 of 47, ECF No. 1-1. According to this language, the MMIC Policy's insuring agreement extends to non-fiduciary errors in "**administration**," which includes any of the following acts by Meriter in connection with its employee benefits program: giving counsel to employees; interpreting the program; handling of records or processing benefits in connection with the program; or enrolling, terminating, or cancelling employees under the program.[9] MMIC Policy at 37 of 47, ECF No. 1-1.

The Class Action was premised on precisely such conduct by Meriter:

- <u>Giving Counsel to Employees/Interpreting the Program</u>: The Class alleged that Meriter made material misstatements and omissions in "interpret[ing]" provisions of the Plan when "communicating with participants regarding the Plan." Original Complaint, ¶ 69, ECF No. 1-4; Class Action Complaint ¶¶ 82-84, ECF No. 1-5 (alleging that Meriter misled participants in describing "the Plan, its benefits and benefit calculation provisions").

- <u>Giving Counsel to Employees</u>: The Class alleged that Meriter failed to fully counsel employees about the changes made in the 2003 Amendment of the Plan. Original Complaint, ¶¶ 83-85, ECF No. 1-4; Class Action

---

[9] The MMIC Policy defines "**employee benefits program**" to include "pensions and profit sharing plans," which obviously includes the Meriter Plan at issue in the Class Action. Original Complaint ¶ 12, ECF No. 1-4.

18

> Complaint ¶¶ 103-109, ECF No. 1-5 (criticizing brochure Meriter
> distributed to participants describing changes in Plan).

Even without the benefit of Wisconsin's liberal rules requiring construction of the Class Action

Complaint in favor of coverage, it is clear that these allegations constitute "claims . . . arising

from the administration of [Meriter's] employee benefits program."

Indeed, MMIC's pre-suit coverage correspondence and prior pleadings before this Court

repeatedly conceded that the Class Action Complaint asserts non-fiduciary administrative errors

by Meriter.  In its February 2011 letter, MMIC expressly acknowledged that the claims against

Meriter arose from the "administration" of the Plan:

> It is possible that some of the acts complained of arise out of the "administration"
> of the Plan.  Specifically, there is an allegation that the beneficiaries were
> improperly advised of the operation of the 2003 Plan amendment that had the
> effect of reducing the benefits that would be accrued in future years.  It is possible
> that a court would find that such failure was "giving counsel" to the beneficiaries
> or "interpreting" [the] Plan.  Because this claim, if proved, is potentially covered,
> MMIC will agree to defend you in this matter.

*See, e.g.*, February 2011 Letter at 5, ECF No. 1-7; *see also* June 2011 Letter at 1, ECF No. 28-2

(admitting that MMIC's duty to defend was "argua[ble]"); October 2011 Letter at 6, ECF No. 1-

10 (stating that "certain of the conduct alleged in the Complaint might constitute covered

**administration**, notably those alleging communication of inaccurate information or failure to

communicate accurate information to participants"); Federal Crossclaim ¶ 28, ECF No. 18

(quoting Case No. 15-cv-87 at ECF No. 48 ¶ 50 & ECF No. 76 ¶ 50 & ECF No. 84 ¶ 50) (stating

that the Class Action Complaint could be read to allege "nonfiduciary errors in administrating

the Plan").

MMIC has conceded that the Original Complaint and Class Action Complaint allege errors

arising from Meriter's "administration" of the Plan.  Accordingly, there can be no legitimate

dispute that the Class Action triggered the key provisions in the MMIC Policy's insuring

agreement.

**B.    MMIC cannot escape its duty to defend by asserting that the Class Action Complaint did not seek "damages" as defined in its policy.**

After initially determining that it had a duty to defend, MMIC asserted in its October 2011 Letter that it had *no* duty to defend because the relief sought in the Class Action did not "appear to" constitute **damages**, even though there had been no material change to the Class Action allegations since MMIC initially acknowledged its obligation to defend.  October 2011 Letter at 4, ECF No. 1-10.  Under MMIC's apparent theory, because an insurer cannot indemnify an insured for withheld benefits, the insurer does not have to defend a suit seeking recovery of such benefits.  MMIC cannot escape its duty to defend on this basis for three independent reasons, any of which is sufficient to defeat MMIC's argument.

*First*, MMIC apparently intends to argue that principles of public policy announced in cases such as *May Dep't Stores Co. v. Federal Ins. Co.*, 305 F.3d 597, 601 (7th Cir. 2002) or *Level 3 Communications, Inc. v. Federal Ins. Co.*, 272 F.3d 908 (7th Cir. 2001) relieve it of its duty to defend.  Those cases, however, addressed whether an insurer has a duty to *indemnify* for a settlement or judgment consisting of amounts due under contract or ill-acquired gains, not whether an insurer has a duty to *defend* those same suits.  Even assuming *arguendo* that the rationale of these nonbinding cases is applicable here, their rationale extends only to an insurer's duty to indemnify.  The defense of lawsuits does not create a "moral hazard" problem.  Indeed, an insurer has a duty to defend a suit that is "groundless, false, fraudulent . . . [or] utterly specious," contemplating that an insurer has a duty to defend a suit in which a defendant may be vindicated against a meritless claim notwithstanding any public policy against insuring fraud. *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 660 N.W.2d 666, 674 (Wis. 2003).  In *Level 3* itself, the insurer (coincidentally, Federal) offered a defense to the insured, despite its position

20

that it owed no duty to indemnify ill-gotten gains.  *See Level 3*, 272 F.3d at 912; *Level 3 Commc'ns, Inc. v. Fed. Ins. Co.*, No. 96 C 5346, 2000 WL 1053971, at *1 (N.D. Ill. July 31, 2000).  There is simply no basis to extend *Level 3* to encompass an insurers' duty to defend.

*Second*, for purposes of a duty to defend analysis, "what matters is whether the conduct alleged in the complaint is arguably within a category of wrongdoing covered by the policy." *Air Eng'g,* 828 N.W.2d at 570.  As demonstrated in the section above, that is clearly the case here.  For instance, courts interpret insurance policies "as a whole" according to "the intent of the parties as expressed in the language of the policy," keeping in mind that the court's interpretation must "conform[] to the understanding of a reasonable person in the position of the insured," and that "the reasonable expectations of coverage of an insured should be furthered by the interpretation given." *Connors v. Zurich Am. Ins. Co.*, 872 N.W.2d 109, 116-17 (Wis. Ct. App. 2006); *Bormann v. Sohns*, 727 N.W.2d 341, 343 (Wis. Ct. App. 2006).  After a broadly-worded insuring agreement, the MMIC Policy contains a specific, but narrow, exclusion pertaining to benefits:  the policy does not cover the "failure to provide benefits because they are not properly funded or because of an insurance company's failure to comply with the terms of its policy." MMIC Policy at 34 of 47, ECF No. 1-1 (emphasis supplied).  Given its choice to specifically exclude a narrow category of benefits, it is difficult to imagine how MMIC can overcome Wisconsin's rules of construction favoring insureds and argue that its policy—a self-styled "Employee *Benefits* Administration Liability" policy that provides coverage for non-fiduciary administrative errors under ERISA—does *not* provide coverage for a suit simply because it makes allegations regarding "benefits."  If this were so, why would MMIC have excluded only

*some* types of benefits from the coverage in its policy?[10]

*Third*, MMIC's application of the term "**damages**" to the relief sought in the Class Action cannot be squared with the facts here.  Consistent with its mandate to interpret insurance policies in conformance with the "reasonable expectations" of the insured, the Wisconsin Supreme Court has cautioned against adopting a narrow reading of the term "damages" in insurance policies. *Johnson Cntrls., Inc. v. Emp. Ins. of Wausau*, 665 N.W.2d 257, 281 (Wis. 2003) (rejecting "too-confining, overly technical definition of 'damages'" in a liability policy formulated by other courts).  Moreover, the MMIC Policy does not provide coverage for the undefined term "damages," but for a defined term "**damages**," which means "*all amounts of money* [ ] payable to compensate for loss because of injury to which this insurance applies."  MMIC Policy at 38 of 47, ECF No. 1-1 (emphasis added).  The MMIC Policy affords a duty to defend "*any suit* against the insured alleging [] **damages**."  *Id.* at 34 of 47.  Applying these plain terms, the monetary relief sought by Plaintiffs because the § 204(h) notice was deficient, inhibited them from understanding the plan and timely pursuing their rights, and injured them clearly constitutes "**damages**."  At a minimum, the question is "fairly debatable," and the Court should assume all "reasonable inferences" in favor of coverage.  *Sisson*, 756 N.W.2d at 676.

MMIC may also argue that the attorneys' fees sought by Plaintiffs do not constitute "**damages**."  But the Wisconsin Supreme Court has disapproved of the case MMIC relied upon for this proposition in its pre-suit coverage correspondence, and in any event, the defined term "**damages**" is a broader term in the MMIC Policy than the undefined word "damages."  *See Johnson Controls*, 665 N.W.2d at 281 (disapproving of *School District of Shorewood v. Wausau*

---

[10] Relatedly, the MMIC Umbrella Policy contains a broad exclusion for any "liability based upon [ERISA] or similar provisions of any federal, state or local statutory law or common law."  ECF No. 26-2 at 11.  MMIC obviously knew how to craft broad exclusions pertaining to pension benefits; if MMIC did not want to cover insureds for any and all benefits owed under ERISA, it could have included a similarly-broad exclusion in its primary policy.

*Ins. Companies*, 488 N.W.2d 82 (Wis. 1992), which held that attorneys' fees were not "damages"). Moreover, MMIC conceded that attorneys' fees were *potentially* covered in their February 2011 Letter. *See* February 2011 Letter at 6, ECF No. 1-6 (conceding that "MMIC would . . . indemnify a portion of the attorney's fees claim" that was attributable to the covered claims). As such, to prevail under Wisconsin's duty to defend standards, MMIC will need to prove that its prior position that the Class Action created a potential for **damages** was not only incorrect, but indisputably incorrect.

### C. MMIC has not and cannot meet its burden to show that any exclusions operate to preclude coverage.

It is well-settled under Wisconsin law that "if the claim triggers the initial grant of coverage in the insuring agreement, [the court] next examine[s] the various exclusions to see whether any of them preclude coverage of the present claim." *Wilson Mut. Ins. Co. v. Falk*, 857 N.W.2d 156, 173-74 (Wis. 2014). An insurer "bears the burden of proving that an exclusion applies." *Id.* When construing the insurance policy, "[e]xclusions are narrowly or strictly construed against the insurer if their effect is uncertain." *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 673 N.W.2d 65, 73 (Wis. 2004). It is rare for an exclusion to preclude coverage at the duty to defend stage. *See Marks*, 881 N.W.2d at 338 (Bradley, J., concurring) ("Typically, however, as the majority notes . . . an examination of policy exclusions at the duty-to-defend stage will not operate to relieve an insurer of its duty to defend.").

Here, MMIC cannot meet its burden to prove that any exclusion applies to preclude coverage. In its flip-flop letter, MMIC stated that "most" of the allegations in the Class Action Complaint involved "conduct of the Plan sponsor or of Plan fiduciaries," and thus would be excluded by a provision of the MMIC Policy barring coverage for "liability of an **insured** as a fiduciary under [ERISA]." By admitting that "most" allegations in the Class Action Complaint

would fall within the fiduciary exclusion, MMIC conceded that some allegations potentially were not excluded: the *non-fiduciary* administrative coverage afforded by the MMIC Policy. Given the number of non-fiduciary allegations in the Class Action Complaint discussed above that created at least an arguable potential for liability, the Court must "resolve any doubt regarding the duty to defend in favor of the insured" and hold that MMIC was obligated to defend Meriter in the Class Action. *Air Eng'g*, 828 N.W.2d at 569.

## III.   Under Wisconsin Law, Federal's Duty to Defend is Excess to MMIC's Primary Duty to Defend

All parties agree that Federal had a duty to defend the Class Action.  Assuming the Court agrees that MMIC also had such a duty, the issue of whether the MMIC Policy or Federal Policy is "primary" is a straightforward one.  Wisconsin courts examine "other insurance" clauses in concurrent insurance contracts to determine which policy should be primary and which should be excess, and they give effect to the expressed language of both policies "if that can reasonably be accomplished." *Riccobono v. Seven Star, Inc.*, 610 N.W.2d 501, 505 (Wis. App. 2000).  Under the settled law of Wisconsin, which adopts the majority rule nationwide, Federal's "excess" language is held to be just that—excess—over the MMIC Policy, which has "pro rata" other insurance language.  *See supra* Background § II (quoting "other insurance" clauses in both policies); *Burgraff v. Menard, Inc.*, 853 N.W.2d 574, 579 (Wis. App. 2014) (when a "proration clause in one insurance policy conflicts with an excess clause in another insurance policy, the excess clause controls") (citing *Lubow v. Morrissey*, 108 N.W.2d 156 (Wis. 1961)); *Faltersack v. Vanden Boogaard*, 158 N.W.2d 322, 324 (Wis. 1968) (finding the carrier with the pro rata language primary and the carrier with the excess language excess); 12 A.L.R.4th 993 ("The [rule] adopted by most jurisdictions, holds that in such a conflict, the terms of the excess clause prevail over the terms of the pro-rata clause.").

24

This should end the inquiry as to which insurer has the primary duty to pay all of the defense costs. But MMIC has resisted this inevitable result on various grounds—even initially refusing to fund Meriter's defense by making what it now concedes is an erroneous assertion that Wisconsin was among the states that adopted the minority rule that held that "defense costs should be shared" in these circumstances.[11]  February 2011 Letter at 7, ECF No. 1-6.

Most recently, MMIC has argued that the other insurance clauses in the MMIC and Federal Policies do not apply "because the MMIC Policy and Federal Policy cover different risks." MMIC Counterclaim ¶ 57, ECF No. 26.  It is entirely unclear why MMIC believes this is the case.[12]  Regardless of how MMIC tries to distort the facts and law, this argument is incorrect both factually and legally.

It is true that Wisconsin adopts the maxim shared among many jurisdictions that "other insurance" clauses are applicable only if two "insurance policies provide coverage for the same parties and the same risk." *Riccobono*, 610 N.W.2d at 383.  What this means under Wisconsin law is that "[w]henever two policies apply to the same insured at the same time," courts should examine other insurance clauses. *Burgraff*, 875 N.W.2d at 607.  For instance, if a commercial

---

[11] MMIC first argued that the "other insurance" clauses *did apply* to defense costs, but that costs must nonetheless be shared.  February 2011 Letter at 7, ECF No. 1-6.  After it retained coverage counsel, MMIC next argued that the other insurance clauses *did not apply*, but that Federal and MMIC had a "shared defense responsibility."  June 2011 Letter at 2 ECF No. 28-2.  When MMIC retained new counsel, it asserted several times that "MMIC's indemnity coverage is primary and Federal's is excess" for claims covered under both policies, but that nonetheless a shared duty should be discharged by an equitable division of defense costs.  *See* Case No. 15-cv-87 at ECF No. 48 ¶ 51 & ECF No. 76 ¶ 51 & ECF No. 84 ¶ 51.  And, finally, now that it has replaced its coverage counsel again, MMIC appears to have returned to its second position and concluded that the parties must share defense costs and that the other insurance clauses do not apply.

[12] Similarly, MMIC has added a new argument to its counterclaim in this case, contending that the "other insurance" clauses of the MMIC and Federal Policies do not impact its policy because, as it puts it, "neither policy 'insures' defense costs."  MMIC Counterclaim ¶ 58, ECF No. 26.  MMIC has not yet explained this curious assertion, which is simply wrong in any event.  *See* Federal Policy at 65 of 138, ECF No. 18-1 (policy affords specified coverage for **Loss**, which is a defined term that includes **Defense Costs**).

general liability policy and an automobile policy provide some coverage in connection with the same automobile accident (as was the case in *Burgraff*), courts examine "other insurance" clauses to determine "the issue of which policy must pay first." *Id.*

In contrast, circumstances where policies do not "apply . . . at the same time" or do not cover the "same risk" generally arise when a suit potentially implicates two *successive* insurance policies issued to the same insured. In that situation, courts have held that because the insurance policies involve different time periods, they do not cover the same "risk" and therefore that the "other insurance clauses" should not apply—even though these policies *do* offer the same *type* of coverage. *See, e.g.*, *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1079 (7th Cir. 2004) (two CGL policies providing "advertising injury" coverage insured "the same *kind* of risk" but not the "same risk" for purposes of an "other insurance" analysis, "because the policies are successive," not concurrent (emphasis added)); *Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*, 759 N.W.2d 613, 625 (Wis. 2009) (other insurance provisions do not apply to "successive insurance policies"); 3 Law and Prac. of Ins. Coverage Litig. § 38:2 (explaining that "same risk" analysis is designed to avoid application of other insurance clauses to successive policies). This is a common issue arising under "occurrence" based policies, where the given "occurrence" may span multiple policy years, and the insured may have purchased the same type of coverage over multiple policy years. *Taco Bell*, 388 F.3d at 1079 ("To apply 'other insurance' clauses in such a case would make insurers liable in part for occurrences outside the period covered by their policies."). It is a less common issue under claims-made policies, like the MMIC and Federal Policies, because the "claim" is typically deemed made at a fixed moment in time.

Where the operative policies provide concurrent coverage, however, the law in both Wisconsin and the great weight of authority nationwide holds that "other insurance" clauses

26

apply because the policies insure the "same risk" so long as the policies provide some overlapping coverage implicated by a part of a claim. *See, e.g.*, *Burgraff*, 875 N.W.2d at 607; *Fed. Ins. Co. v. St. Paul Fire*, 985 F.2d at 980 (other insurance clauses applied where one policy insured only defamation liability, one insured defamation and antitrust liability, and the complaint asserted both defamation and antitrust counts); *Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*, 945 N.E.2d 1013, 1017 (N.Y. 2011) (CGL policy and D&O policy provided overlapping potential coverage for injurious falsehood claim and thus insured the same risk); *cf. Gemini Ins. Co. v. Kukui'ula Dev. Co.*, 855 F. Supp. 2d 1125, 1142 (D. Haw. 2012) (distinguishing *Fieldston* on the grounds that the policies at issue in *Gemini*, which triggered different claims in a single lawsuit, were a mirror image of each other and did not overlap at all, while the policies in *Fieldston* both potentially provided coverage for the injurious falsehood claim).[13]   And where this is the case, courts hold that the "primary" carrier has the sole defense obligation and is responsible entirely for the defense of its insured. *See, e.g.*, *Burgraff*, 875 N.W.2d at 607; *Fed. Ins. Co. v. St. Paul Fire*, 985 F.2d at 980; *Fieldston*, 945 N.E.2d at 1017.

Here, both the MMIC and Federal Policies contain one overlapping section of coverage. While most of the coverage in the Federal Policy's fiduciary coverage section is fiduciary in nature, the Federal Policy *also* provides *non-fiduciary* coverage for errors in "**Administration**."[14]   The MMIC Policy, likewise, provides non-fiduciary coverage for errors in **administration**.  MMIC Policy at 34 of 47, ECF No. 1-1.  The coverages are almost identical;

---

[13] A few cases nationwide, like *Gemini*, also apply the doctrine to hold that insurance policies offering distinct coverages that trigger separate claims in a lawsuit do not trigger "other insurance" clauses.  That is not the case here, because the non-fiduciary administrative coverage provided by both the MMIC and Federal Policies was potentially implicated by the Class Action.

[14] Under the Federal Policy, the covered **Wrongful Acts** include "any negligent act, error or omission in the **Administration** of any **Plan** committed, attempted, or allegedly committed or attempted by an **Insured** in the **Insured's** capacity as such."  Federal Policy at 46 of 138, ECF No. 18-1.

the two policies define "administration" as follows, with both the term **Plan** and **employee benefits program** applying to Meriter's pension plan:

| MMIC Policy definition of "Administration" | Federal Policy definition of "Administration" |
|---|---|
| **"Administration"** means the following acts authorized by the **named insured**:<br><br>a) giving counsel to employees with respect to the **employee benefits program**;<br><br>b) interpreting the **employee benefits program**;<br><br>c) handling of records and processing of benefits in connection with the **employee benefits program**;<br><br>d) enrolling, terminating or canceling employees under the **employee benefits program**.<br><br>MMIC Policy at 37 of 47, ECF No. 1-1. | **Administration** means:<br><br>1. advising, counseling or giving notice to **Employees**, participants or beneficiaries with respect to any **Plan**.<br><br>2. providing interpretations with respect to any **Plan**; or<br><br>3. handling of records or effecting enrollment, termination or cancellation of **Employees**, participants or beneficiaries under any **Plan**.<br><br>Federal Policy at 42 of 138, ECF No. 18-1. |

As such, there is an obvious overlap between the coverage for non-fiduciary errors in administration offered by both policies. MMIC previously had no trouble admitting this, or admitting that the allegations triggered both policies. Federal Crossclaim ¶ 28, ECF No. 18 (quoting Case No. 15-cv-87 at ECF No. 48 ¶ 50 & ECF No. 76 ¶ 50 & ECF No. 84 ¶ 50) (quoting MMIC stating that "[b]oth the MMIC Policy and the Federal Policy provide some indemnity coverage, largely parallel but not identical, for nonfiduciary errors in **Administration**, as defined by the particular policy"). Because the same Class Action allegations trigger coverage in both policies in the same period, both policies provide coverage for the same risk.

Therefore, given that Class Action triggered MMIC's and Federal's respective duties to defend at least one of the exact same claims alleging non-fiduciary administrative errors during the exact same policy period, both policies insured that same risk and the policies' "other insurance" clauses control.  In Wisconsin, that means that "the excess clause controls," and MMIC had the sole primary duty to defend Meriter in the Class Action.  *Burgraff*, 853 N.W.2d at 579.

## IV.   The Interim Agreement Establishes that MMIC Must Repay Federal for all Defense Costs that Federal Paid, Thereby Replenishing the Federal Policy's Limit of Liability.

After MMIC abruptly sued Meriter and Federal, the parties entered into the Interim Agreement to resolve that litigation and put off any future coverage litigation until the Class Action was resolved.  The Interim Agreement provides that "[i]f it is adjudicated that MMIC is obligated to pay 100% of the defense fees and expenses incurred in the [Class] Action, MMIC agrees to pay Federal the amounts Federal has advanced for fees and expenses incurred on or after November 17, 2010, subject to all applicable limitations in the MMIC Primary Policy including any applicable limitation of liability."  Interim Agreement ¶ 4, ECF No. 26-8.  This Motion requests a judgment declaring that MMIC had a primary duty to defend the entire Class Action, and is therefore obligated to pay 100% of the defense fees and expenses incurred in the Class Action.  If the Court issues such a declaration, the Interim Agreement gives Federal a clear and unambiguous contractual right to recover these amounts from MMIC, with proof of the dollar figure of such fees and expenses as only the issue remaining.

MMIC cannot escape its primary defense obligation by arguing that its policy covered only some counts in the lawsuit.  *Doyle*, 580 N.W.2d at 249 ("Where an insurer's policy provides coverage for even one claim made in a lawsuit, that insurer is obligated to defend the entire suit.").  Nor can MMIC escape its obligation by arguing that it is somehow "equitable" for

MMIC and Federal to split defense costs.  In *Fieldston*, a directors' and officers' liability policy potentially covered all eight counts in the underlying case, whereas a CGL policy potentially covered one, and only one, count.  The *Fieldston* court held that the CGL insurer must defend the suit; the New York high court acknowledged the "equitable appeal" of proportioning defense costs where one insurer potentially covered more claims than the other, but held that it could not rewrite the policy to do so.  *See* 945 N.E.2d at 1019 ("If the policies were drafted using different language, we might hold differently, but we may not judicially rewrite the language of the policies at issue here to reach a more equitable result.").  The same holds true in Wisconsin. *Burgraff*, 875 N.W.2d at 610 ("we [will] not pro rate liability [for defense costs] among insurers when the policy language did not provide for it," and indicating that it would apply an "other insurance" clause as written as applied to the duty to defend because it could not "re-write [the] policy language"); *Grube v. Daun*, 496 N.W.2d 106, 122 (Wis. Ct. App. 1992) ("apportionment of responsibility for the defense is neither practical nor desirable"); *Burgess v. J.C. Penney Life Ins. Co.*, 167 F.3d 1137, 1140 (7th Cir. 1999) (Wisconsin law) (court cannot "create a new contract to release the insurer from a risk it could have avoided through a more foresighted drafting of the policy").

In sum, by operation of the policies' "other insurance" clauses, MMIC has full responsibility for providing coverage for defense costs in the Class Action, and Federal had no such responsibility by reason of its wholly excess defense obligation.  *See, e.g.*, *Woosypiti v. Travelers Ins. Co.*, 14-AP-1354, 2015 WL 4527041, at *4 (Wis. Ct. App. 2015) (unpublished) (carrier rendered excess by "other insurance" clause has no duty to defend until primary carrier's duty ceases); 1 Insurance Claims and Disputes § 4:11 (6th ed.) ("Most courts have held that an excess insurer that has a duty to defend is not obligated to provide a defense if the primary

30

insurer is so obligated.").  MMIC therefore must repay Federal for all defense costs that Federal advanced on or after November 17, 2010 pursuant to the Interim Agreement.

## V.      MMIC Breached Its Duty To Defend By Failing To Exercise Its Complete Primary Duty To Defend Meriter.

"[A]n insurer that declines to defend does so at its peril."  *James Cape & Sons Co. ex rel. Polsky v. Streu Const. Co.*, 775 N.W.2d 117, 119 (Wis. 2012).  MMIC's argument seems to be that it "defended" Meriter because it decided to pay 50% of defense costs after nearly a year passed from the date of tender, after it sued Meriter, and after it put Federal and Meriter in the position of having to settle that lawsuit.  This is not so.  If the Court agrees with Meriter that MMIC owed a *complete* primary duty to defend it in the Class Action, MMIC has breached that duty by never providing that *complete* defense.  *See Sauk Cty. v. Employers Ins. of Wausau*, 550 N.W.2d 439, 444 (Wis. Ct. App. 1996) (stating that "partial payment of defense costs does not satisfy an insurer's duty to defend," and indicating that an insurer would breach its duty to defend if it did not pay all defense costs).  The fact that Federal stepped up to cover the defense costs that MMIC failed to pay does not cure MMIC's breach.  *See Burgraff*, 875 N.W.2d at 611 (breach uncured where one insurer paid defense costs after second insurer withdrew).

"The general rule is that where an insurer wrongfully refuses to defend on the grounds that the claim against the insured is not within the coverage of the policy, the insurer is guilty of a breach of contract which renders it liable to the insured for all damages that naturally flow from the breach."  *Newhouse by Skow v. Citizens Sec. Mut. Ins. Co.*, 501 N.W.2d 1, 6 (Wis. 1993).  Should the Court declare that MMIC breached its duty to defend, the sole remaining issue in the case on Count I of the Meriter Complaint would be the damages owed to Meriter as a result of that breach.

31

**Conclusion**

For the foregoing reasons, Meriter respectfully requests that this Court grant this Motion for Partial Judgment on the Pleadings, declaring that MMIC owed a complete primary to defend Meriter in the Class Action and is liable to Meriter and Federal for the damages that either may prove in the case.

Dated:  October 5, 2016

By:  s/ David J. Turek
      J. Ric Gass, SBN 1011998
      David J. Turek, SBN 1035356
      Gass Weber Mullins LLC
      309 N. Water Street, Suite 700
      Milwaukee, Wisconsin 53202
      Phone:  414-223-3300
      Fax:  414-224-6116
      gass@gasswebermullins.com
      turek@gasswebermullins.com

      John P. Buckley
      Gregory E. Schopf
      William M. Kirby, Jr.
      Nixon Peabody LLP
      70 West Madison Street, Suite 3500
      Chicago, Illinois 60602
      Phone: 312-977-4400
      Fax: 844-556-0735
      jpbuckley@nixonpeabody.com
      gschopf@nixonpeabody.com
      wmkirby@nixonpeabody.com

      *Attorneys for Meriter Health Services, Inc.*